EARLE v. HARRISON.

1. A finding of fact by the Circuit judge, from written testimony submitted to him, sustained.
2. Where a testator, by his will, left a tract of land, the residuum of his estate, to his son F., out of which F. was to pay to another son J. and to a daughter E., to each, one-third of its value, and F., having settled with J., died intestate, J. is an incompetent witness, in behalf of E., to prove communications made to him by F. in relation to a claim of E. against her father's estate, payable out of this residuum. But a son of E., who was also executor of the testator, is not incompetent. *Code,* § 400 [415].

---

Before KERSHAW, J., Anderson, March, 1881.

The opinion fully states the case. It may be added, however, that the case was heard on testimony taken by the master and reported to the court.

*Mr. Jos. N. Brown,* for appellants.

*Mr. B. F. Whitner,* contra.

December 11th, 1882. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Francis E. Harrison, late of Anderson county, died intestate in November, 1878, seized and possessed of a considerable estate, and leaving a widow, Elizabeth P. Harrison, and a number of children. Administration upon his estate was granted to E. P. Earle, the plaintiff, who, as early as February 5th, 1879, instituted this proceeding, which was in the nature of a creditor's bill to sell lands in aid of personal assets to pay debts, injunction, &c., although it was not distinctly charged that the estate was insolvent.

The widow and children, the heirs-at-law, were made parties, as well as some of those claiming to be creditors, viz., Mrs. Elizabeth H. Whitner, J. W. Norris and the State Savings Bank at Anderson. As it appeared from the answer of Mrs. Elizabeth H. Whitner, a sister of the intestate, that she had claims against the estate, growing out of the estate of their father, James Harrison, deceased, the executors of his will, James W. Harrison and James H. Whitner, were also made parties. The creditors of the estate must have been few in number, as there was no order calling in creditors, but Mrs. Whitner, in her answer, presented two claims against the estate, which were resisted by the administrator and heirs, and are the only matters in controversy which have been brought to the attention of the court. They were as follows :

First. James Harrison, late of Anderson county, the father of Mrs. Whitner (wife of Judge J. N. Whitner), Francis E. Harrison, the intestate, and James W. Harrison, executed his will, in 1858, by which he disposed of a large estate to his then aforesaid children. A copy of the whole will is not in the brief, but it is not denied that the extracts given are correct. After disposing of the family homestead on the Savannah river, "Andersonville," to Francis E. Harrison, and making certain other specific devises, the eighth clause provided as follows : " I give and bequeath the rest and residue of my estate, real and personal, in equal shares to my daughter Elizabeth H. Whitner, and my sons James W. Harrison and Francis E. Harrison, desiring and expecting that the same may be divided by and amongst them-

selves in such way as will be convenient and just, with a becoming spirit of confidence and liberality," &c.

It does not appear what property fell under the residuary clause, but it is admitted that the Mason tract of land, in the county of Anderson, constituted part of the residuum under the will, but in reference thereto the testator, on February 18th, 1862, executed a codicil to his will, in these words: "It will be seen by reference to my said will that no specific mention is made of the tract of land in Anderson district, known as the Mason tract, though I have often declared verbally that it was my wish that the same should be held and enjoyed by the proprietor of the Andersonville lands, being in my judgment a necessary appurtenant, the more especially as a provision farm, and now, therefore, I specifically declare and hereby give and devise the said tract of land to my son Francis E. Harrison, the same to be accounted for by him at its fair value, as so much of his share of the residue of my estate, as directed to be divided between and among my children, legatees under my will, as therein set forth," &c.

In June, 1865, the testator, James Harrison, died, leaving in full force the said will and codicil, naming his sons, James W. Harrison and the said Francis E. Harrison, and his grandson, James H. Whitner, as executors, but, there being no debts and the beneficiaries all being *sui juris*, and named as executors, the will was never admitted to probate until lately. The parties seemed to suppose that they could settle among themselves, but, as it often happens in such cases, it has turned out that they were mistaken, and we cannot refrain from saying that it would have been better if the will had been admitted to probate immediately after the death of the testator and the estate settled while all the parties were living.

There are some glimpses in the evidence that the parties had some settlement among themselves, but Mrs. Whitner claimed that under the provisions of the will and codicil above stated, she was entitled to one-third of "the fair value" of the Mason tract of land devised to the intestate, Francis E. Harrison, which was a charge upon the same; that during his life he always

admitted his liability to pay the same, but had never done so at the time of his death.

Second. The other claim of Mrs. Whitner is thus stated by herself in her amended answer: "The claim against her late father and chargeable against his estate in the hands of the said F. E. Harrison, is his obligation for the payment of $1,020.80, given to equalize the defendant and her late husband in advancements of real estate, bearing interest from 1st of January, 1848, which remains unpaid; that the said James Harrison continued to acknowledge this as a subsisting obligation, and the said F. E. Harrison repeatedly in his life-time recognized it as a claim to be paid out of his father's estate, and agreed with this defendant that the sum should be paid, with interest, from the —— day of ———; and this defendant alleges that the said Mason tract of land, being the residuum of her father's estate, and held by the said F. E. Harrison at the time of his death, as such is chargeable with the payment of the said sum and interest thereon."

Letters of the intestate, F. E. Harrison, down to a short time before his death, particularly as to the claim for one-third of the value of the Mason tract of land, were given in evidence, and James W. Harrison and James H. Whitner, lately qualified as executors of the will of James Harrison, and made defendants in the case, were, subject to objection, examined as witnesses for the claimant, particularly as to declarations and admissions of the intestate, Francis E., in his life-time, in regard to the second claim on the obligation of her father, James Harrison.

The case was heard by Judge Kershaw, who sustained both claims, and decreed "that Mrs. Elizabeth H. Whitner is entitled as residuary legatee under the will of her father, James Harrison, to one-third of the value of the Mason tract of land, devised to the said Francis E. Harrison, which was due and payable to the said Elizabeth H. Whitner twelve months after the death of the said James Harrison. That the value of said land at the time the said Francis E. Harrison came into the possession of it under his father's will, and at the time the said legacy was payable, was six dollars per acre, and that this claim of the said Elizabeth H. Whitner was a charge upon the said land. * * * It is further ordered that the said F. E. Harrison having recognized

the obligation of his father, James Harrison, for the payment of one thousand and twenty and eighty one-hundredths dollars as a subsisting obligation against his estate, to the extent of its face value, as of the date it was given, to wit, on the 10th day of October, 1851, and having as a compromise of the matters between the estate of James Harrison and the estate of Joseph N. Whitner, deceased, agreed on the —— day of January, 1874, that such obligation should be paid to the said Elizabeth H. Whitner, sole executrix and legatee of the said Joseph N. Whitner, the said Elizabeth H. Whitner is also entitled to be paid from the proceeds of the said Mason place, as that portion of his father's estate liable for the payment of debts, the further sum of $1,289.76, with interest from January, 1874."

From this decree, the administrator and heirs of Francis E. Harrison appeal to this court upon the following grounds:

1. " Because the claim of the defendant, Mrs. E. H. Whitner, founded on the note of James Harrison to the Hon. J. N. Whitner, dated October 10th, 1851, for $1,020.80, was without consideration, barred by lapse of time and the statute of limitations, and should have been rejected.

2. " Because the supposed obligation to pay $1,020.80 was met by the acknowledgment of indebtedness of J. N. Whitner to said James Harrison for $1,400, bearing date the 21st day of September, 1853.

3. " Because the said James Harrison, by his will, dated June 30th, 1858, gave to J. N. Whitner and his two sons, James W. and F. E. Harrison, all his lands in Florida, two-fifths to said J. N. Whitner, and the other three-fifths equally to his two sons, which, of itself, equalized the supposed inequality referred to in said memorandum or note, and should be construed as a substitution thereof.

4. " Because a parol promise, alleged to have been made in January, 1874, by intestate, to pay said sum of $1,200 on a claim bearing date October 10th, 1851, is not sufficient in law to charge the estate of said F. E. Harrison with its payment.

5. " Because the promise proved by the witnesses was to pay only $1,200, and the judgment at most should have been for only $1,200, with interest from January, 1874.

6. "Because the said James H. Whitner and J. W. Harrison were not competent witnesses to establish said supposed claim.

7. "Because the estate of said F. E. Harrison should have been required to pay only $5 per acre for the Mason lands, being the sum paid by him to James W. Harrison, his co-tenant."

First. Very little need be said as to the first claim. None of the exceptions object to the Circuit decree, giving Mrs. Whitner a charge upon the Mason tract of land, for one-third of its value in 1866, due to her by the intestate, F. E. Harrison. The evidence was full and uncontradicted, including letters from the intestate himself shortly before his death, that this claim, under his father's will, had never been paid. The only objection made to the decree, in this regard, is by the seventh exception, which insists that the Circuit judge erred in fixing the value of the land at $6 per acre, claiming, as James W. Harrison sold his third interest in the land to his brother, estimating the value of the land at $5 per acre, it should have been fixed at that price in reference to the third interest therein of Mrs. Elizabeth H. Whitner.

That was a question of fact decided by the Circuit judge upon the evidence, and in looking through it we see no sufficient reason to disturb that finding. James W. Harrison may have agreed to take from his brother less than the real value of the lands, and that should not control in estimating its value in reference to the interest of Mrs. Whitner. The only three witnesses examined as to the value of the land, Joseph A. McClusky, G. W. Maret and O. H. P. Fant, all concur in saying that in 1866 the Mason land was worth $6 per acre. So far as this claim is concerned, it is the judgment of this court that the judgment of the Circuit Court should be affirmed.

Second. There is much more difficulty about the other claim. It is certainly very old, not arising under the will of James Harrison, but long anterior to the execution of the will, and entirely independent of it. James Harrison owned property in the State of Florida, as well as in Anderson. He had three children, Mrs. Whitner, James W. Harrison and Francis E. Harrison. It seems that about the year 1848 he made a partial division of his property among his children, and to equalize

them, he gave to Judge Whitner an obligation, of which the following is a copy :

" Inasmuch as certain advances have been made to James W. Harrison beyond those made to J. N. Whitner, to wit, on account of lands adjoining the village of Anderson, being one-half of said lot of land (one-half having been promised him by his brother), which I estimate at five hundred dollars, and from concern of John C. Griffin & Co., the sum of five hundred and twenty and eighty one-hundredths dollars, do execute this my obligation, to secure as near equality as may be, should I not pay in my own life-time, and hereby promise to pay to J. N. Whitner the sum of one thousand and twenty dollars and eighty cents, with interest from the first day of January, 1848, being about the time of said advances to J. W. H.

(Signed,)            JAMES HARRISON.
" Oct. 10, 1851."

After this obligation was given there were money transactions between James Harrison and Judge Whitner, certainly one on September 21st, 1853, in which Judge Whitner acknowledged his liability to account to James Harrison for $1,400, the price of stock in the Farmers' and Exchange Bank of Charleston.

On June 30th, 1858, James Harrison executed his will, by which he disposed of a large estate to his three children. As before stated, a full copy of the will is not before us, but it is stated that the will gave Mrs. Whitner more than an equal share of the Florida lands. Judge Whitner died in 1864, leaving Mrs. Whitner his sole devisee and executrix, and James Harrison died in 1865, leaving in full force the will with codicils above described, which named as executors F. E. Harrison, James H. Harrison and James H. Whitner, but it was not admitted to probate until after the death of F. E. Harrison, the intestate.

It did not certainly appear whether the parties interested under the will ever had a final settlement of the Florida property, but it was suggested that there had been such settlement, and that Mrs. Whitner had some claim growing out of it against the intestate, Francis E. Harrison. The executors of James Harrison, viz., James W. Harrison and James H. Whitner,

testified, subject to exception, that the intestate, Francis E. Harrison, in his life-time admitted his liability not only on the obligation of James Harrison to Judge Whitner, above described, but also on some claim not explained, growing out of the division of the Florida lands, and as late as January, 1874, agreed, by way of compromise, to pay the sum of $1,289.76, with interest from January, 1874, which the Circuit judge decreed in favor of Mrs. Whitner, " to be paid from the proceeds of the said Mason place, as that portion of his father's estate liable for the payment of debts."

The administrator and heirs of F. E. Harrison object to this, alleging that the original obligation of James Harrison was without consideration and void ; that James W. Harrison and James H. Whitner were not competent witnesses, under the code, to prove admissions of F. E. Harrison, he being dead ; that if competent, parol proof of an agreement of F. E. Harrison to pay the debt of his father was inadmissible under the statute of frauds ; that if the original obligation was binding as a debt upon James Harrison, it was, in fact, paid in his life-time, or if not paid was barred ; and if the original obligation was not an ordinary debt, but to be accounted for at his death as evidence of advancements to the others, it was necessarily canceled and substituted by the large provision for Mrs. Whitner in the will. From the view this court takes, it will be necessary for this claim to go back to the Circuit for further evidence, and, therefore, it would not be proper to consider now the points made, except that, in relation to the competency of James W. Harrison and James H. Whitner, as witnesses in behalf of Mrs. Whitner, to prove the admission of F. E. Harrison, he being dead. Their testimony was taken subject to objection, but the Circuit judge seems to have made no ruling upon the subject, except by considering the testimony as if no objection had been made.

The general law was that no person offered as witness should be excluded by reason of an interest in the event of the suit. But by section 400 of the code (according to the late revision) it is enacted that a party may be examined as a witness, " provided, however, that no party to the action shall be examined in regard to any transaction or communication between such wit-

ness and a person at the time of such examination deceased, * * * as a witness against a party then prosecuting or defending the action as executor, administrator, &c., of such deceased person, when such examination, or any judgment or determination in such action, can in any manner affect the interest of such witness, or the interest previously owned or represented by him," &c. James W. Harrison, a party, was offered as a witness against the administrator of F. E. Harrison, in regard to communications between him and F. E. Harrison, in his life-time, and the question is whether the judgment in the action can "in any manner affect the interest of such witness, or the interest previously owned by him."

It seems to us that the judgment will affect the interest of James W. Harrison. In order to simplify the matter, let us consider this as an action brought under the statute of 3 *and* 4 *W. & M., Gen. Stat.*, § 1949, by Mrs. Whitner, as alleged creditor of James Harrison, against the administrator of his devisee, F. E. Harrison, and impleading also the executors of James Harrison, deceased, to make liable for the debt of the ancestor a certain tract of land (Mason) in possession of said F. E. Harrison, as residuary devisee at the time of his death. See *Smith* v. *Grant*, 15 *S. C.* 146. If in this action there should be a recovery, upon whom would devolve the liability to pay that recovery? By the will, as it stood originally, that tract of land was given to be equally divided between F. E. Harrison, James W. Harrison and Mrs. Whitner, and if the codicil had not been executed, it is perfectly clear that the loss of payment would have fallen on the three owners equally.

Does the codicil, which simply made partition of the Mason land, by giving specifically the land to one charged with the shares of the others, make any change as to the liability of the respective parties? Two of the tenants in common cannot get their full shares in money, and leave the land in possession of the third to pay the whole debt of the ancestor; each must pay his share of any debt of the ancestor, which falls upon the Mason land. F. E. Harrison has purchased for value two-thirds of that land, according to the terms of the codicil, and

. W

he only holds one-third of it as a gift from his testator. A residuary devisee cannot be considered as having any interest from his testator until the testator's debts are paid. A man must be just before he is generous.

If James Harrison had left unpaid debts enough to absorb the whole of the Mason land, F. E. Harrison would really have received nothing from him in respect to that land, and if a debt of James Harrison takes a part of it, the same principle *pro tanto* must apply. The debt must be paid first, and then the thirds of James W. Harrison and Mrs. Whitner would be limited to what remained after the debt of the ancestor was paid out of it, or, having already received their shares of the whole, they must each pay one-third of the debt. It cannot alter the case that one of the residuary devisees is also the creditor of the ancestor seeking payment.

If, on the other hand, the execution of the codicil, by specifically giving the Mason land to F. E. Harrison, charged as aforesaid, took it out of the residuum, then it would follow that said land would not be any more liable for this debt of the ancestor than any other lands which passed under the will of James Harrison which are still in possession of the devisee. So that, in any view of the case, we think that the judgment would affect the interest of James W. Harrison, and that it was error to admit him as a witness against the administrator of F. E. Harrison as to communications had with him in his life-time. That he had sold his interest in the Mason tract of land to his brother, makes no difference; the words are "or the interest previously owned or represented by him."

James H. Whitner, the other executor of James Harrison, does not seem to have any interest in the event of the suit which would be affected by the judgment. He is the son of Mrs. Whitner, but relationship does not disqualify. We do not see that he was an incompetent witness.

The judgment of this court is that the judgment of the Circuit Court be affirmed, so far as relates to the claim of a charge upon the Mason tract of land to the extent of one-third of its value, and that in all other respects the decree be set aside without prejudice, and the case remanded for further evidence and

consideration. If the claim of Mrs. Whitner against the estate of her father, James Harrison, should be established in whole or in part, the said recovery to be paid in equal parts by the three devisees, viz.: one-third by James W. Harrison, one-third by Mrs. Whitner herself, and only the remaining third by the estate of Francis E. Harrison, deceased.